AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>ROBERT K. ASANTE<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 2:20-mj-153<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   June 20, 2014 - March 24, 2017   in the county of   Franklin   in the
  Southern   District of   Ohio   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1956(h) | Money Laundering Conspiracy |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Shawn Mincks, Special Agent, IRS-CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   3-3-20

_____
*Judge's signature*

City and state:   Columbus, OH   Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

# NITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

## AFFIDAVIT
## IN SUPPORT OF CRIMINAL COMPLAINT

I, Shawn Mincks, Special Agent, U.S. Department of the Treasury, Internal Revenue Service, Criminal Investigation, being duly sworn, depose and say that:

### Introduction and Purpose

1. I am a Special Agent with IRS-Criminal Investigation and have been so employed since 2008. I have received specialized law enforcement training at the Federal Law Enforcement Training Center, Glynco, Georgia and additional specialized training from the IRS. My duties as a Special Agent include conducting investigations of individuals and businesses that have violated Federal Law, particularly those laws found under Title 18, Title 26 and Title 31 of the United States Code. I have participated in multiple such investigations, including several investigations related to individuals who launder funds derived from romance and other international fraud schemes.

2. I am assigned to pursue a federal criminal investigation of Robert Asante (Asante) and other co-conspirators. I make this affidavit in support of the filing of a criminal complaint against Asante and contend there is probable cause to believe that he and his co-conspirators were and are engaged in a conspiracy to commit money laundering in violation of 18 USC 1956(h).

### Evidence in Support of Probable Cause

3. Through interviews and analysis of bank records and other documentation, I believe the investigation to date tends to show that Asante and others, both known and unknown, have been engaged in a conspiracy to commit money laundering in that they have knowingly and willfully facilitated the receipt, concealment and transfer of funds derived from so-called "Romance Scam" victims.

4. Perpetrators of the scams post fake profiles on various dating websites, then individuals throughout the United States and other countries are contacted by or enticed to initiate contact with the perpetrators. After contacting the victims online, the perpetrators use email, instant messaging services, text messaging and phone calls to build a relationship of trust with the victims. Once trust is gained, the perpetrators convince the victims to provide money purportedly for various investments or need-based reasons. The perpetrators tell many of the victims that they are overseas. The perpetrators further explain, for example, that they have located a gold or diamond mine through which they can both become very wealthy if the victim

invests money; have had financial trouble and need assistance; or have had legal trouble, are in prison and need money to pay off the captors. The victims then wire transfer, direct transfer or deposit money into bank accounts located within the United States and controlled by Asante and/or other co-conspirators. Evidence indicates that many of these bank accounts were opened in the names of business entities controlled by the co-conspirators. The victims provide the funds with the expectation that the money will be invested or used to assist their online "friend."

5. Contemporaneous and subsequent to the wire transfers, account transfers and deposits received by the co-conspirators from the victims, the co-conspirators dispose of the funds through cash withdrawals; checks issued to parties known to the co-conspirators; transfers to each other, as well as others not named in this affidavit; international and domestic wire transfers; personal expenditures; and purchases of official checks. None of the victims receive any return on their "investments" or any of their money back. The loss to all victims exceeds $7 million.

6. I believe that evidence garnered so far in the investigation tends to show that the recipients of the funds, specifically Asante, knew that the funds they were receiving were derived from some kind of unlawful activity, and the funds were, in fact, derived from a specified unlawful activity, namely wire fraud (18 USC 1343). From the recipient bank accounts, the funds were not used in the manner promised to the victims of the fraud. Instead, the funds were transacted in a fashion designed to conceal the nature and source of the funds through cash withdrawals and other mechanisms. Some of the transactions designed to conceal the nature and source of the funds were conducted internationally. Additionally, many debits were in excess of $10,000. Since they were working in concert with each other, as well as the perpetrators of the Romance Scams, the activity was in violation of 18 USC 1956(h).

<u>Relevant Bank Accounts and Entities</u>

7. According to bank records, Asante opened and controlled the following bank accounts in his own name:

      a. July 30, 2014 – August 1, 2017 - PNC Bank account # xx7452 (PNC 7452).

      b. December 23, 2014 – October 10, 2017 - Bank of America account # xx9127 (BOA 9127).

      c. September 9, 2015 – June 16, 2017 – JP Morgan Chase Bank account # xx3358 (JPMC 3358).

Asante was the sole signer on all three of the bank accounts.

8. Asante's wife at the time also opened and controlled an account of interest:

    a. June 20, 2014 – May 6, 2016 – Bank of America account # xx2027 (BOA 2027).

9. According to records from the Ohio Secretary of State, Asante established Ingwet Canal (Ingwet) on March 2, 2017 by filing Articles of Organization with the State of Ohio. According to bank records, he opened and controlled the following bank accounts in the name of Ingwet:

    a. March 9, 2017 – November 30, 2017 – JP Morgan Chase Bank account # xx1215 (JPMC 1215).

Asante was the sole singer on this bank account.

10. According to an interview with Person 10, whose identity is known to your Affiant, Person 10 met somebody she believed to be named Nicholas Carl Hoffman on an online dating website in 2014. Hoffman convinced Person 10 that he was a middleman who facilitated international shipments, and he needed Person 10 to provide money to him for shipping fees, storage fees and taxes. Bank records show that, between December 4, 2014 and December 19, 2014, Person 10 deposited $110,000 in cash into BOA 2027, which was in the control of Asante's wife. Person 10 expected to be repaid, but she never received any of her money back.

    a. After receiving the funds, Asante and/or his wife engaged in numerous transactions designed to conceal the nature, source, location, and control of the funds. Bank records show that the transactions included, but were not limited to, issuances of checks payable to Asante totaling $68,800. Many of the checks contained memoranda stating "Car Payment."

        i. Bank records show that, of the checks issued to him, Asante deposited $17,300 into PNC 7452 where a large portion of the funds was used on personal expenditures. Asante deposited the remaining funds into a Huntington Bank account he controlled. From there, Asante sent an additional $12,000 to various individuals in Ghana. He also withdrew cash or purchased official checks totaling over $30,000.

11. Bank records show that, between January 13, 2015 and August 31, 2015, Person 10 also deposited $106,000 in cash into BOA 9127 and wired $30,500 into BOA 9127, which was in the control of Asante.

    a. Bank records show that, after receiving the funds from Person 10 into BOA 9127, and on or about the dates set forth below, Asante engaged in the following financial transactions, among others, involving the proceeds of wire fraud to

3

conceal or disguise the nature, location, source, ownership, or control of the proceeds:

    i. April 22, 2015 - $8,000 online banking transfer to a third party;

    ii. May 12, 2015 - $10,000 online banking transfer to a third party;

    iii. May 13, 2015 - $4,000 online banking transfer to a third party.

b. After receiving the funds from Person 10 into BOA 9127, Asante transmitted funds, derived from wire fraud, from the United States to a place outside the United States and such transactions were designed to conceal the nature, source, location, and control of the funds. The transactions included the following:

    i. April 22, 2015 - $1,122 transaction at Wal-Mart which consisted of a MoneyGram transfer of $1,100 to Ghana plus fees;

    ii. May 11, 2015 - $965.50 transaction at Wal-Mart which consisted of a MoneyGram transfer of $950 to Ghana plus fees;

    iii. May 16, 2015 - $509.90 transaction at Wal-Mart which consisted of a MoneyGram transfer of $500 to Ghana plus fees;

    iv. May 20, 2015 - $965.50 transaction at Wal-Mart which consisted of a MoneyGram transfer of $950 to Ghana plus fees;

    v. June 9, 2015 - $1,224 transaction at Wal-Mart which consisted of a MoneyGram transfer of $1,200 to Ghana plus fees;

    vi. June 9, 2015 - $1,015.50 transaction at Wal-Mart which consisted of a MoneyGram transfer of $1,000 to Ghana plus fees;

    vii. June 25, 2015 - $$965.50 transaction at Wal-Mart which consisted of a MoneyGram transfer of $950 to Ghana plus fees;

    viii. June 30, 2015 - $1,015.50 transaction at Wal-Mart which consisted of a MoneyGram transfer of $1,000 to Ghana plus fees;

    ix. June 30, 2015 - $1,015.50 transaction at Wal-Mart which consisted of a second MoneyGram transfer of $1,000 to Ghana plus fees;

    x. July 2, 2015 - $1,015.50 transaction at Wal-Mart which consisted of a

          MoneyGram transfer of $1,000 to Ghana plus fees;

    xi. July 3, 2015 - $1,015.50 transaction at Wal-Mart which consisted of a MoneyGram transfer of $1,000 to Ghana plus fees;

    xii. July 22, 2015 - $1,122 transaction at Wal-Mart which consisted of a MoneyGram transfer of $1,100 to Ghana plus fees;

    xiii. July 28, 2015 - $615.50 transaction at Wal-Mart which consisted of a MoneyGram transfer of $600 to Ghana plus fees;

    xiv. July 28, 2015 - $615.50 transaction at Wal-Mart which consisted of a second MoneyGram transfer of $600 to Ghana plus fees.

12. According to an interview with Person 11, whose identity is known to your Affiant, Person 11 met somebody she believed to be named Michael Gresham on an online dating website in February of 2017. Gresham told Person 11 that he was a retired Colonel and owned a business that dealt in diamonds and gold. Gresham also introduced Person 11 to Asante, with whom she communicated directly. Over time, Gresham and Asante instructed Person 11 to send money to various individuals for myriad reasons, including expenses involving a camera and a shipment of gold. Person 11 eventually discovered that the profile set up by Gresham was fake, and she had been scammed. Bank records show that, between February 21, 2017 and August 14, 2017, Person 11 deposited $68,500 in cash into BOA 9127, which was in the control of Asante.

    a. Bank records show that, after receiving the funds from Person 11 into BOA 9127, and on or about the dates set forth below, Asante engaged in the following financial transactions, among others, involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

        i. February 21, 2017 - $1,003 ATM cash withdrawal consisting of $1,000 cash plus a $3.00 fee;

        ii. March 9, 2017 - $505.50 ATM cash withdrawal consisting of $500 cash plus a $5.50 fee.

13. According to an interview with Person 12, whose identity is known to your Affiant, Person 12 is a 73-year old widow who met numerous individuals online. These individuals included somebody she believed was serving in the military in the United Kingdom; somebody named Felix Dante Okoro from Ghana; and somebody she believed to be named General Stephen Townsend. Person 12 sent "hundreds of thousands of dollars" to various people at the instruction of Okoro and Townsend. An "unknown banker" instructed Person 12 to send money

5

to Asante. Bank records show that, between July 6, 2017 and July 13, 2017, Person 12 wired $160,778 to BOA 9127, which was in the control of Asante.

    a. Bank records show that, after receiving the funds from Person 12 into BOA 9127 and on or about the dates set forth below, Asante engaged in the following monetary transactions in criminally derived property of a value greater than $10,000:

        i. July 11, 2017 - $28,600 wire to Company 12 in Ghana;

        ii. July 14, 2017 - $49,850 wire to Company 12 in Ghana;

14. Bank records show that, on April 13, 2017, Person 12 wired $33,899 to JPMC 1215. The memorandum on the wire read "Goods."

    a. After receiving the funds from Person 12 into JPMC 1215 and on or about the date set forth below, Asante engaged in the following monetary transaction in criminally derived property of a value greater than $10,000:

        i. April 14, 2017 - $25,250 wire to Company 6 in Ghana.

15. According to an interview with Person 4, whose identity is known to your Affiant, Person 4 met somebody she believed to be named Scott Bradley Hopkins on an online dating website. Hopkins told Person 4 that he needed to transport a package containing a large amount of money and jewelry to the United States. Person 4 sent approximately $300,000 to various individuals via MoneyGram, Western Union and bank wires, including somebody she believed was a military general in Ghana. She believed the funds were to be used to facilitate transport of the package. Bank records show that these funds included a wire to JPMC 1215, which was in the control of Asante, in the amount of $25,000 on September 26, 2017.

    a. Bank records show that, after receiving the funds from Person 4 into JPMC 1215 and on or about the date set forth below, Asante engaged in the following monetary transaction in criminally derived property of a value greater than $10,000:

        i. September 26, 2017 - $20,000 wire to a company in Illinois.

16. According to an interview with Person 13, whose identity is known to your Affiant, Person 13 met somebody she believed to be named Matt Dickson on an online dating website in 2016. Dickson told Person 13 that he was a geologist who did excavation work. Dickson told Person 13 that his partner was Asante. Dickson eventually convinced Person 13 to send money to various people, including Asante. The money was supposed to be invested and used to pay for

shipping fees. Person 13 was supposed to have been repaid at a rate of 10%. Bank records show that, on September 22, 2016 and September 23, 2016, Person 13 wired $25,000 and $4,000, respectively, to PNC 7452, which was in the control of Asante. Person 13 never received any money back.

    a. Bank records show that, after receiving the funds from Person 13 into PNC 7452 and on or about the date set forth below, Asante engaged in the following monetary transaction in criminally derived property of a value greater than $10,000:

        i. September 26, 2016 - $20,000 wire to an individual in Ghana.

17. Bank records show that, between January 17, 2017 and May 22, 2017, Person 13 provided an additional $148,500 to Asante, all of which was deposited into JPMC 3358.

    a. After receiving the additional funds from Person 13 into JPMC 3358, Asante transmitted or caused to be transmitted funds, derived from wire fraud, from the United States to a place outside the United States and such transactions were designed to conceal the nature, source, location, and control of the funds. The transactions included the following:

        i. January 15, 2017 – $241.78 cash withdrawal at an ATM located in Accra, Ghana;

        ii. January 18, 2017 - $482.43 cash withdrawal at an ATM located in Accra, Ghana;

        iii. January 18, 2017 – a second $482.43 cash withdrawal at an ATM located in Accra, Ghana;

        iv. January 19, 2017 – $479.40 cash withdrawal at an ATM located in Accra, Ghana;

        v. January 19, 2017 – a second $479.40 cash withdrawal at an ATM located in Accra, Ghana;

        vi. January 20, 2017 - $477.41 cash withdrawal at an ATM located in Accra, Ghana;

        vii. January 20, 2017 - $474.11 cash withdrawal at an ATM located in Kumasi, Ghana;

7

viii.  January 21, 2017 - $474.11 cash withdrawal at an ATM located in Kumasi, Ghana;

ix.  January 21, 2017 – a second $474.11 cash withdrawal at an ATM located in Kumasi, Ghana;

x.  January 22, 2017 – $474.11 cash withdrawal at an ATM located in Kumasi, Ghana;

xi.  January 23, 2017 - $474.11 cash withdrawal at an ATM located in Kumasi, Ghana;

xii.  January 26, 2017 - $475.75 cash withdrawal at an ATM located in Kumasi, Ghana;

xiii.  January 30, 2017 - $476.85 cash withdrawal at an ATM located in Kumasi, Ghana;

xiv.  February 1, 2017 - $471.94 cash withdrawal at an ATM located in Kumasi, Ghana;

xv.  February 2, 2017 - $471.40 cash withdrawal at an ATM located in Santasi, Ghana;

xvi.  February 2, 2017 – a second $471.40 cash withdrawal at an ATM located in Santasi, Ghana;

xvii.  February 3, 2017 - $470.32 cash withdrawal at an ATM located in Santasi, Ghana;

xviii.  February 3, 2017 – a second $470.32 cash withdrawal at an ATM located in Santasi, Ghana;

xix.  February 4, 2017 - $469.25 cash withdrawal at an ATM located in Accra, Ghana;

xx.  February 4, 2017 – a second $469.25 cash withdrawal at an ATM located in Accra, Ghana;

xxi.  February 5, 2017 - $469.25 cash withdrawal at an ATM located in Accra, Ghana;

xxii.  February 6, 2017 - $469.25 cash withdrawal at an ATM located in Accra,

    Ghana;

  xxiii. February 6, 2017 – a second $469.25 cash withdrawal at an ATM located in Accra, Ghana.

b. Bank records show that, using funds received into JPMC 3358 from Person 13 and on or about the dates set forth below, Asante engaged in the following financial transactions, among others, involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

  i. February 9, 2017 - $7,000 cash withdrawal;

  ii. February 14, 2017 - $3,000 ATM cash withdrawal;

  iii. February 15, 2017 - $2,000 ATM cash withdrawal;

  iv. February 21, 2017 - $1,000 ATM cash withdrawal;

  v. March 2, 2017 - $2,000 ATM cash withdrawal;

  vi. March 7, 2017 - $3,000 ATM cash withdrawal;

  vii. March 13, 2017 - $2,000 cash withdrawal;

  viii. March 14, 2017 - $10,000 cash withdrawal;

  ix. March 24, 2017 - $1,000 ATM cash withdrawal.

c. Bank records show that, after receiving the funds from Person 13 into JPMC 3358 and on or about the dates set forth below, Asante engaged in the following monetary transactions in criminally derived property of a value greater than $10,000;

  i. February 10, 2017 - $18,000 wire to a company in Ghana;

  ii. March 1, 2017 – Issuance of a check in the amount of $25,000 payable to Asante.

**Conspirator 9**

18. From at least April of 2012 through February of 2018, Conspirator 9 and others engaged in a conspiracy to commit money laundering in that they knowingly and willfully facilitated the

9

receipt and transfer of funds derived from so-called "Romance Scam" victims. On February 14, 2018, Conspirator 9 was arrested following the filing of a criminal complaint related to this activity. On March 1, 2018, a grand jury returned an indictment charging Conspirator 9 and others with numerous counts in violation of money laundering statutes. Conspirator 9 has since pled guilty to violations of 18 USC 1956(h) and is currently serving a prison sentence.

19. When Conspirator 9 was arrested on February 14, 2018, his iPhone was seized and subsequently searched pursuant to a search warrant. The search of the phone revealed that Conspirator 9 was involved in communication strings via the communication application WhatsApp with Conspirator 5 in Ghana.

20. Conspirator 9's iPhone contained a WhatsApp conversation between Conspirator 9 and a phone number based in Ghana. The name associated with the number in Conspirator 9's iPhone is a nickname known to be used by Asante. In the conversation, Asante made statements confirming a relationship between Conspirator 5, Conspirator 9 and Asante.

21. Conspirator 9 told investigators that Conspirator 5 often sent him messages regarding fraudulent financial transactions involving Asante. Conspirator 9 stated that he would routinely relay information from Conspirator 5 to Asante with respect to the transactions. Conspirator 9 stated that Asante knew that the money being sent to his bank accounts was "bad money."

22. I know from investigative experience that smart phone messaging applications such as WhatsApp are often installed on the phones of the perpetrators of fraud schemes such as this. WhatsApp is a free instant messaging and voice over internet protocol service. This application is used by persons engaged in fraud to communicate with individuals while potentially disguising their true identities. These communications can include communications with co-conspirators as well as victims.

## Conclusion

23. Based on the information presented in this affidavit, I contend that Asante and others are engaged in a conspiracy to commit money laundering in violation of 18 USC 1956(h).

Shawn A. Mincks
Special Agent, IRS-CI

10

Subscribed and sworn to before me

This \_\_\_3\_\_\_ day of \_\_\_March\_\_\_, 2020

_____

**Chelsey M. Vascura, U.S. Magistrate Judge**

11